**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BRUCE TILLMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:13-cv-0762** |
| | ) | |
| **JASON WOODALL, BRUCE WESTBROOK,[1]** | ) | **Judge Sharp** |
| **ROBERTA BURNS, MARIA NANCE, and** | ) | |
| **JULIA CAMPBELL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Bruce Tillman is a state prisoner presently incarcerated at the Lois M. DeBerry Special

Needs Facility ("DSNF") in Nashville, Tennessee. The plaintiff's *pro se* complaint (ECF No. 1) is before

the Court for an initial review pursuant to 28 U.S.C. § 1915(e)(2).

**I.      STANDARD OF REVIEW**

Under 28 U.S.C. § 1915(e)(2), the court must dismiss a civil complaint filed *in forma pauperis* that

fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a

defendant who is immune from such relief. The Sixth Circuit has confirmed that the dismissal standard

articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under th[at] statute[]

because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d

468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*,

556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In addition, however, a *pro se* pleading must be

liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers."

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also*

---

[1] Although the plaintiff refers to this defendant as "Westbrook," the Court takes judicial notice that the Warden of the DeBerry Special Needs Facility is Bruce Westbrooks, and will refer to him as such in this opinion.

*Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010) ("[A] *pro se* prisoner is unlikely to understand the complexity of federal law regarding prisoner rights, and hence we read a prisoner's complaint liberally.").

II.     **FACTUAL ALLEGATIONS**

The persons named as defendants in this action include Jason Woodall, Deputy Commissioner of Operations for the Tennessee Department of Correction ("TDOC"), named in his official capacity only; Bruce Westbrooks, Warden of DSNF, named in his official capacity only; Roberta Burns, physician and Medical Director at DSNF, named in both her official and individual capacity; Maria Nance, DSNF Health Services Administrator, named in her official and individual capacity; and Sgt. Julia Campbell, DSNF Grievance Board Chairperson, named in her official and individual capacity.

The plaintiff alleges that he is 62 years old and has been incarcerated for 29 years. He has had serious health issues and is presently a medical patient at DSNF, where he has been housed in the Health Center since April 2011. His medical history includes five strokes, dysphagia (requiring a medical feeding tube), gastroesophageal reflux disease, arteriosclerosis, benign prostate hyperplasia, hypertension, and coagulation disorder. He is confined to a wheelchair and is presently undergoing swallow therapy to learn to eat again without the feeding tube. He alleges that he suffered two strokes while he was housed at the Northwest Correctional Complex in Tiptonville, Tennessee, and it took medical staff there four and a half hours to transport him from the prison to a hospital. (*See generally* Tillman Affidavit, ECF No. 1-2.)

The plaintiff's complaint does not concern his medical care, which he states is adequate at this time. Rather, he alleges that he has been threatened with the termination of his medical care in retaliation for his having filed prison grievances related to other conditions of his confinement at DSNF.

More specifically, the plaintiff alleges that:

(1) He is denied the opportunity to earn program credits based solely on his medical disabilities and handicaps (despite a TDOC policy that addresses situations like his), as a result of which he is "forced to serve a greater portion of [his] sentence because of [his] handicap/disability." (ECF No. 1, at 9.)

(2) He is confined 23 hours a day and is never allowed outside for fresh air or sunshine. His one hour of "recreation" consists of access to an eight-foot wide bare hallway between two rows of rooms,

even though there is an outside exercise area attached to the building in which he is housed. (*Id.* at 9–10.)

(3) As a matter of policy, because he is confined to the medical facility, he is denied such ordinary prison-life privileges as purchasing commissary items available to non-medical inmates; participating in religious services and going to chapel; and going to the library, gym, and "yard." In addition, his visitation privileges are more restricted than those of inmates who are not in the medical facility. (*Id.* at 10.)

In addition, the plaintiff alleges that he submitted a grievance concerning these conditions, but was denied a fair hearing before an impartial tribunal, in violation of TDOC policy and procedures by defendant Julia Campbell. The plaintiff also alleges that the response to his grievance and appeal was falsified insofar as he was never permitted to present evidence or testimony to a committee, and there was never a committee, although the documented response to his grievances indicates that all these occurred. In addition, the falsified documents were forwarded to the TDOC Commissioner's Office without allowing the plaintiff an opportunity to attach supplemental clarification and response, as also required by TDOC policy and procedure. Defendant Woodall concurred with the result, without response.

Defendant Nance responded as "Supervisor of the Grieved Employer or Department" by stating: "Mr. Tillman has been stable medically. He will be discharged to sending institution where he will be able to have access to his concerns. No medical indication for him to stay @ DSNF." (Complaint, Ex. 3, ECF No. 1-5.) The plaintiff interprets this response as a threat to withdraw appropriate and necessary medical care in retaliation for his have raised issues concerning the conditions of his confinement. He also asserts that Nance's assertion that there is no longer a "medical indication" for him to remain at DSNF is simply false. The plaintiff also points out that his grievances had nothing to do with his medical care, *per se*, but rather concern prison policy governing the conditions of the confinement of disabled inmates, including himself, and that these policies are determined by defendants Westbrooks, Burns, and Woodall.

The plaintiff asserts that the defendants' actions are coordinated with the intent to interfere with his right to seek adequate health care, and as punishment and retaliation for exercising that right as well as the right to pursue a prison grievance, and "a blatant attempt to circumvent the Tennessee Healthcare Decisions Act which establishes the right to determine one's own healthcare decisions." (ECF No. 1, at

15.) He further contends that the defendants "are aware of these rights; knew of these violations; had the authority to stop them; and intentionally failed to do so." (*Id.*)

The plaintiff further asserts that most of the restrictive conditions of which he complains were initially implemented under a pretext of medical necessity, but in reality were "a response to inmates resistance of forced/involuntary medical treatment and filing of inmate grievances." (*Id.* at 16.) He contends that all the named defendants have adopted and enforced these conditions "as medical treatment," and have refused to address the issues at the grievance level. (*Id.*)

The plaintiff asserts that the defendants have thus violated his federal rights as well as state law as well. He seeks compensatory damages from "all defendants, jointly and severally," as well as injunctive relief.

### III.     DISCUSSION

The federal courts are courts of limited jurisdiction. In this case, the plaintiff invokes the Court's federal-question jurisdiction under 28 U.S.C. § 1331 by asserting claims under 42 U.S.C. § 1983. In addition, although the plaintiff does not refer to the Americans with Disabilities Act ("ADA"), the Court notes that the allegations in the complaint may implicate Title II of the ADA. The plaintiff also implicitly invokes the Court's supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367(a).

#### A.     ADA Claims

Title II of the ADA prohibits public entities from discriminating against individuals on the basis of their disability. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). The ADA defines "public entity" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State." *Id.* § 12131(1). The Supreme Court has expressly held that the term includes state prisons. *United States v. Georgia*, 546 U.S. 151, 154 (2006); *Yeskey*, 524 U.S. at 210.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under the ADA, a plaintiff must show that he is "(1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, [services or activities in which he seeks to participate], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program, [services, or activities] by reason of his or her disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008) (citation omitted). In addition, although individuals may not be held liable under the ADA, *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009), a state agency like TDOC is not necessarily immune from a damages claim under the ADA, because Title II abrogates state sovereign immunity for claims based on "conduct that *actually* violates the Fourteenth Amendment." *Georgia*, 546 U.S. at 159 (emphasis in original).

Assuming that the medical restrictions the plaintiff identifies in his complaint (inability to swallow and restriction to a wheelchair, among others) qualify him as having a disability under the ADA, it appears that the allegations in the complaint, construed liberally, may state a colorable claim against all the defendants in their official capacity under the ADA based on the plaintiff's allegations that he is barred from participation in prison activities and benefits as a matter of official prison or TDOC policy, not because he is medically unable to participate, but because of the fact that he is disabled and confined to a medical facility. Moreover, to the extent that the plaintiff alleges that the conduct that violated the ADA also violated his constitutional rights, the plaintiff may be entitled to monetary damages as well as injunctive relief.

### B.    Section 1983 Claims

Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Gratta*n, 468 U.S. 42, 45 n.3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir. 1996). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2002) (citations omitted); 42 U.S.C. § 1983. Both parts of this test must be satisfied to support a claim under § 1983. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### 1.    *Official-Capacity Claims Under 42 U.S.C. § 1983*

Defendants Woodall and Westbrooks are named in their official capacity only, and the other three defendants are named in both their official and individual capacity. All the defendants in this case are employed by TDOC, a state agency, or by DSNF, a state prison that is also an arm of the state. With regard to § 1983 suits against state officials, the Supreme Court has stated: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, in a suit for damages, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Id.* As a result, the complaint fails to state a colorable claim for damages under 42 U.S.C. § 1983 against the defendants in their official capacity, and such claims are subject to dismissal under 28 U.S.C. § 1915(e)(2).

The Supreme Court has recognized, however, that a state official sued in her official capacity for prospective injunctive relief is a "person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *see also Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (suits for prospective injunctive relief against state officials in their official capacity are not barred by the Eleventh Amendment). In order to state an official-capacity claim against a state official under § 1983, the plaintiff must show that the state is a wrongdoer because of an "officially executed policy, or the toleration of a custom" that caused a constitutional violation. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1993).

Here, the plaintiff does not specifically identify which of his constitutional rights have been violated, but his allegations appear to implicate several constitutional provisions. First, he may state claims under the Eighth and First Amendments to the United States Constitution, based on his allegations that he has been denied access to any fresh air and sunshine, and to religious services or chapel.

In addition, the Equal Protection Clause of the Fourteenth Amendment fundamentally guarantees that "all persons similarly situated shall be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Clause "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250,

260 (6th Cir. 2006). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Where neither a fundamental right nor a suspect class is at issue, the rational-basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). Thus, a plaintiff who does not allege discrimination based on membership in an identifiable class or group may state a "class-of-one" claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)).

The plaintiff's claims about participation in various prison programs do not implicate a fundamental right, because the plaintiff does not have a constitutional right to participate in prison programs and activities, or to sentence-reduction credits. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (finding no liberty interest implicated by transfer from one prison to a "substantially less agreeable prison," or in prisoner classification and eligibility for rehabilitative programs, stating that not "every state action carrying adverse consequences for prison inmates automatically activates a due process right"). Moreover, disabled persons are not members of a protected class simply by virtue of their disability. *See City of Cleburne*, 473 U.S. at 445–46 (holding that the mentally retarded do not constitute a suspect class and stating *in dicta* that the mentally ill are not a suspect class).

Classifications based on disability may nonetheless violate the Equal Protection Clause if they lack a rational relationship to a legitimate governmental purpose. *Tennessee v. Lane*, 541 U.S. 509, 522 (2004). Construed liberally, the complaint contains allegations supporting an inference that the plaintiff he has been treated differently from similarly situated persons solely because of his classification as an inmate needing medical care in a particular housing unit, without regard to his actual abilities, and that the decision to treat persons housed where he is was not rationally based on a legitimate governmental objective.

For now, the Court finds that the plaintiff's allegations may state colorable claims for prospective injunctive relief against the defendants in their official capacity based on alleged violations of the plaintiff's constitutional rights under the First, Eighth, and Fourteenth Amendments.

### 2. Individual-Capacity Claims

The plaintiff seeks to pursue claims against defendants Burns, Nance, and Campbell in their individual capacity. While these defendants are undoubtedly "persons" who may be subject to liability under 42 U.S.C. § 1983, the law is also clear that a plaintiff must allege the personal involvement of each defendant in the events giving rise to his claims in order to state a cause of action against that individual. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). Further, merely denying a grievance or affirming the denial of a grievance does not give rise to liability under § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (where defendants' "only roles . . . involve the denial of administrative grievances or the failure to act . . . they cannot be liable under § 1983"); *Martin v. Harvey*, 14 F. App'x 307, 309–10 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

a. Defendant Burns

The plaintiff alleges that defendant Burns intentionally adopted the policies and practices pertaining to inmates in his housing unit that he claims are unconstitutional, for the reasons discussed above. The Court finds that this is sufficient, at this stage, to state a claim against Burns in her individual capacity.

### b. Defendant Nance

The plaintiff's individual claim against defendant Nance arises from her threat to send him to a different prison where, the plaintiff alleges, he would not be able to receive appropriate and necessary medical care. The plaintiff alleges that this threat was in retaliation for his having filed a prison grievance contesting the conditions of his confinement.

To state a claim of retaliation under 42 U.S.C. § 1983, a plaintiff must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999). An inmate has a First Amendment right to file grievances against prison officials. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The plaintiff here clearly alleges that he engaged in conduct protected by the First Amendment by filing a grievance, and that Nance's threat constitutes an adverse action that might deter a person of ordinary firmness from continuing to engage in the protected conduct.[2] The Court finds that the plaintiff has stated a colorable § 1983 claim against Nance based on the allegations of retaliation or threatened retaliation.

### c. Defendant Campbell

The plaintiff's individual-capacity claim against defendant Campbell appears to be based solely on her denial of the plaintiff's grievance and allegedly false statements in her response to the grievance form. As set forth above, however, the denial of a grievance does not give rise to a claim under § 1983. The Sixth Circuit has expressly held that an expectation of receiving process is not a liberty interest protected by the Due Process Clause. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008). Moreover, the plaintiff has no due-process right to file a prison grievance. The Sixth Circuit and other circuit courts have therefore held that there is no constitutionally protected due-process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002). The Court therefore finds that the plaintiff fails to state a claim against Campbell in her individual capacity based on her treatment of the plaintiff's grievance.

---

[2] The plaintiff himself appears not to have been deterred, but he may possess more "firmness" than the "ordinary person."

## IV.  CONCLUSION

For purposes of the initial review required by 28 U.S.C. § 1915, the Court finds that the plaintiff's claims against defendant Campbell in her individual capacity must be dismissed for failure to state a claim for which relief may be granted. In addition, because the official-capacity claims against Campbell are redundant of the official-capacity claims against the other defendants, the claims against Campbell will be dismissed in their entirety. Further, all official-capacity claims under 42 U.S.C. § 1983 for monetary damages are subject to dismissal.

However, the complaint states colorable claims against the four remaining defendants in their official capacity under the ADA for both injunctive relief and monetary damages, and under § 1983 for prospective injunctive relief. The individual-capacity claims against defendants Burns and Nance will also be permitted to proceed.

An appropriate order is filed herewith.

Kevin H. Sharp
United States District Judge